IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  04-cv-02517-WYD-PAC

TERESA A. RUSHING,

     Plaintiff,

v.

ALEXANDER V. KOLOTOV,

     Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Patricia A. Coan, United States Magistrate Judge**

     This is a diversity action in which plaintiff brings state law claims of assault and battery, outrageous conduct and invasion of privacy.  A December 10, 2004 Order of Reference referred this matter to the undersigned for pretrial case management.  A July 15, 2005 Amended Order of Reference referred dispositive motions for recommended disposition. The matter now before me is plaintiff's Motion for Partial Summary Judgment, filed June 24, 2005 [doc. #18].  Defendant filed his *pro se* response to the motion on July 14, 2005.  Oral argument would not be of material assistance.

I. Background

     This action arises out of criminal proceedings against defendant in the U.S. District Court for the District of Colorado.  On October 4, 2004, defendant was found guilty of abusive sexual contact in violation of 18 U.S.C. § 2244(b) and 49 U.S.C. § 46506 (a class B misdemeanor), and simple assault in violation of 18 U.S.C. § 113(a)(5) and 49 U.S.C. § 46506 (another class B misdemeanor).

According to the Findings of Fact in the Memorandum Opinion and Order in criminal case no. 2003-1274M, U.S.A. v. Alexander Vladimirovich Kolotov, entered October 5, 2004 by Magistrate Judge Watanabe (attached to this Recommendation), plaintiff (referred to as "T.R." in the memorandum opinion) and defendant were passengers on a United Airlines flight from Miami to Denver on October 15, 2003. Plaintiff was seated in row 23F, the window seat. In the same row, a married couple (Mr. and Mrs. Voit) occupied the aisle seats. Defendant represented himself to be plaintiff's girlfriend so that he could persuade Mr. Voit to move to another seat, which he did. Mrs. Voit moved with her husband to occupy seats in row 22. Plaintiff was asleep during this time, because her journey began in Buenos Aires, Argentina. Defendant took the seat next to plaintiff. Another passenger, Mr. Gomez, testified that he needed to use the bathroom on numerous occasions due to side effects of medication, walked past row 23 and observed the change in seating arrangements, and later noticed that plaintiff and defendant were covered with a blanket. At some time during the flight, plaintiff awoke to find defendant on top of her, with his hand under her dress some two inches from her groin area. She became very agitated and pressed the call button. She began pushing and screaming at the defendant, who finally got off her. See Mem. Opinion at 2-9.

Plaintiff, a Colorado resident, then filed this civil action against defendant, a resident of Oregon, alleging three claims: (1) assault and battery; (2) outrageous conduct; and (3) invasion of privacy.

## II. Summary Judgment Standard

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

2

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(C).  *Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1068 (10th Cir.2005).  "The burden of showing that no genuine issue of material fact exists is borne by the moving party." *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir.2000).  When applying this analysis, the court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir.2000) (quoting *Martin v. Kansas*, 190 F.3d 1120, 1129 (10th Cir.1999)). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  *Id.* (quoting *Martin*, 190 F.3d at 1129).

Defendant is proceeding *pro se*, and I construe his pleadings liberally.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  As the nonmoving party, defendant has the burden of demonstrating that there are specific facts which would preclude entry of summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "Where a movant has met the initial burden required to support summary judgment, the non-movant then 'must either establish the existence of a triable issue of fact under FED. R. CIV. P. 56(e) or explain why he cannot . . . under Rule 56(f).'" *U.S. v. Simons*, 129 F.3d 1386, 1388 (10th Cir. 1997), quoting *Pasternak v. Lear Petroleum Exploration*, 790 F.2d 828, 832 (10th Cir. 1986).

### III. Standard for Application of Issue Preclusion

Plaintiff seeks summary judgment on liability on all claims through the application

of collateral estoppel, which is more accurately defined as "issue preclusion,"[1] to establish defendant's liability for each of her claims.  Issue preclusion generally refers to the effect of a prior judgment on attempts to re-litigate an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim.   *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (U.S. 2001).  Issue preclusion permits a plaintiff to prevent a defendant from again litigating an issue that defendant previously lost  in another action.  See*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 332-33 (1979) (offensive use of collateral estoppel applies when a plaintiff is seeking to estop a defendant from attempting to re-litigate the issues which the defendant previously litigated and lost).  The general doctrine of estoppel or issue preclusion raised here offensively,[2] is applicable to both criminal and civil proceedings. *Emich Motors Corp. v.  General Motors Corp* ., 340 U.S. 558, 568 (1951). In addition, the findings in a prior criminal proceeding may estop a party in a subsequent civil action, preventing a party from re-litigating claims. *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 157 (1963) (citing *Emich Motors*, 340 U.S. at 568-69).

### IV. Analysis

Plaintiff asserts her claims under Colorado state law, and  "under Colorado law, the

---

[1]The use of the term "issue preclusion" is more precise than "collateral estoppel" or "res judicata." See *Farmers High Line Canal and Reservoir Co. v. City of Golden*, 975 P.2d 189, 196 n. 11 (Colo.1999). In *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, (1984), the U.S. Supreme Court noted that use of the phrases "res judicata" and "collateral estoppel" can lead to confusion because "res judicata" is commonly used as an overarching label for both claim and issue preclusion.

[2]In certain circumstances, the use of offensive issue preclusion can be controversial because it does not promote judicial economy but rather encourages relitigation, and can be unfair to the defendant where a defendant is sued for small or nominal damages in the first action (no incentive to vigorously litigate). See *Parklane*, 439 U.S. at 330-31.  None of those concerns applies to this case.

doctrine of issue preclusion (collateral estoppel) provides that the 'final decision of a court on an issue actually litigated and determined is conclusive of that issue in any subsequent suit.'" *Poole v. State Farm Fire & Cas. Co.*, 941 F.Supp. 964, 967 (D.Colo. 1996), quoting *Pomeroy v. Waitkus*, 183 Colo. 344, 350; 517 P.2d 396, 399 (Colo.1974) (*en banc*).

Defendant's response to plaintiff's motion is two pages long, contains unsupported conclusions, and offers no citation of authority. It does not address any issues raised in plaintiff's motion. Conclusory allegations not supported by evidence are insufficient to resist summary judgment. *See Kidd v. Taos Ski Valley, Inc.*, 88 F.3d 848, 853 (10th Cir.1996).

Notwithstanding, I apply the issue preclusion test to plaintiff's claims. Issue preclusion applies when four criteria are met: (1) the issue decided in the prior case is identical to the one presented in the action in question; (2) there was a final judgment on the merits; (3) the party against whom the preclusion is asserted was a party to the prior adjudication; and (4) the party against whom preclusion is asserted had a full and fair opportunity to litigate the issue in the prior adjudication. *Pomeroy*, 517 P.2d at 399; *Argus Real Estate, Inc. v. E-470 Public Highway Auth.*, 109 P.3d 604, 608 (Colo. 2005); *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 978 (10th Cir. 1995). As the Colorado Court of Appeals recently noted, "a party to a civil action may invoke the doctrine of issue preclusion against a former criminal defendant to preclude him or her from re-litigating an issue decided in the criminal prosecution." *A-1 Auto Repair v. Bilunas-Hardy*, 93 P.3d 598, 600 (Colo. App. 2004).

A. Assault and Battery

According to the Restatement (Second) of Torts, which is the definition followed by Colorado courts, the elements of the intentional tort of assault and battery are the following:

(1) An actor is subject to liability to another for battery if

(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and

(b) an offensive [or harmful] contact with the person of the other directly or indirectly results.

White v. Muniz, 999 P.2d 814, 816 (Colo. 2000) (en banc). With regard to the intent element of the intentional torts of assault and battery, the White court held that, "regardless of the characteristics of the alleged tortfeasor, a plaintiff must prove that the actor desired to cause offensive or harmful consequences by his act. The plaintiff need not prove, however, that the actor intended the harm that actually results." White, 999 P.2d at 819. The Colorado Supreme Court adopted the "dual intent" standard of the Restatement, which requires finding the defendant both intended the contact and intended it to be harmful or offensive. Id. at 818.

Under the four issue preclusion factors, I find that (1) the issues relating to intentional assault are identical; (2) there was a final judgment on the merits in the criminal proceeding, resulting in conviction; (3) that defendant is the same individual named as defendant in the criminal proceeding in which he was convicted; and (4) defendant had a full and fair opportunity to litigate because he was represented by counsel and adjudged guilty of both misdemeanor charges after having the opportunity to present evidence. I conclude that issue preclusion is appropriately applied to this claim, and recommend that

plaintiff's motion for partial summary judgment on liability grounds be granted on plaintiff's assault and battery claim.

B. Outrageous Conduct

The elements of outrageous conduct are: (1) the defendant engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress. *Pearson v. Kancilia*, 70 P.3d 594, 597 (Colo. App. 2003); *McCarty v. Kaiser-Hill Co.*, 15 P.3d 1122, 1126 (Colo.App.2000). Generally speaking, the level of outrageousness required to create liability is extremely high. Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are insufficient. Only conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community, will suffice. *Bob Blake Builders, Inc. v. Gramling*, 18 P.3d 859, 866 (Colo. App. 2001); *see also Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1350 (Colo.1988) (facts must so arouse resentment against the defendant in average members of the community as to lead them to exclaim, "outrageous!").

Based on my review of the findings of fact in the Opinion and Order entered by United States Magistrate Judge Watanabe in the criminal proceeding, which is attached to this Recommendation, and Magistrate Judge Watanabe's finding of guilty on both counts, I recommend finding that this case is one of the rare and extreme instances that the *Churchey* and *Bob Blake Builders* courts contemplated in that an average member of the community would exclaim "outrageous" upon hearing of defendant's behavior.

The first issue preclusion factor of identicality is met on the outrageous conduct claim based on the findings in the Memorandum opinion in the criminal proceeding.   I reiterate the conclusions set forth in my analysis of the assault and battery claim concerning the second, third and fourth factors.   Accordingly, I recommendentry of partial summary judgment on liability on plaintiff's outrageous conduct claim.

C. Invasion of Privacy

Plaintiff's third claim is for invasion of privacy by intrusion.   In Colorado, "invasion of privacy" encompasses three separate torts: (1) unreasonable intrusion upon the seclusion of another ("seclusion"); (2) unreasonable publicity given to another's private life ("disclosure"); and (3) appropriation of another's name or likeness ("appropriation"). *Denver Publishing Co. v. Bueno*, 54 P.3d 893, 897 (Colo.2002).  See *Pearson*, 70 P.3d at 598-99.   The elements of the tort require showing of: an intentional invasion; which would be very offensive to a reasonable person and which resulted in injuries or damages.   See *Rugg v. McCarty*, 476 P.2d 753 , 755 (1970).

In considering the four collateral estoppel elements, I conclude that this claim is sufficiently identical to the elements of the sexual assault charge on which defendant was found guilty beyond a reasonable doubt.  Judge Watanabe found that defendant knowingly (intentionally) touched plaintiff with the intent to abuse, humiliate, harass and degrade. Mem. Opin. at 11-12.   The identicality element is accordingly met.  With respect to the remaining three elements, the same analysis applies here as set forth in my analysis of plaintiff's first claim for relief.  I therefore conclude that issue preclusion applies to plaintiff's third claim, and recommend entry of partial summary judgment on liability on her invasion of privacy claim.

V. Recommendation

For the reasons stated, it is hereby

**RECOMMENDED** that plaintiff's Motion for Partial Summary Judgment on the Issue of Liability  [doc. # 18, filed June 24, 2005] be granted in its entirety; it is

**FURTHER RECOMMENDED** that judgment enter in favor of plaintiff and against defendant on the liability aspect of plaintiff's claims[3] for assault and battery, outrageous conduct, and invasion of privacy,

**Within ten days after being served with a copy of the proposed findings and recommendation, any party may serve and file written objections to the proposed findings and recommendation with the Clerk of the United States District Court for the District of Colorado. The district court judge shall make a determination of those portions of the proposed findings or specified recommendation to which objection is made. The district court judge may accept, reject, or modify, in whole or in part, the proposed findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.**

**Failure to make timely objections to the magistrate judge's recommendation may result in a waiver of the right to appeal from a judgment of the district court based on the findings and recommendations of the magistrate judge.**

---

[3]If judgment is entered as recommended (in favor of plaintiff and against defendant on all her claims), liability would be established, leaving the determination of damages as the only issue for trial.

9

Dated this 27th day of January, 2006.

BY THE COURT:

s/ Patricia A. Coan
PATRICIA A. COAN
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 03 - 1274M

OCT 05 2004

GRE...

UNITED STATES OF AMERICA,

Plaintiff,

v.

ALEXANDER VLADIMIROVICH KOLOTOV,

Defendant.

---

## MEMORANDUM OPINION AND ORDER
## AND
## ORDER DENYING DEFENDANT'S RENEWED ORAL MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 29

---

Entered by Magistrate Judge Michael J. Watanabe

This matter came on for trial to the court on September 28, 2004. The Government was represented by Assistant United States Attorney Josh Stein. The Defendant, Alexander Vladimirovich Kolotov, was present on bond with Attorneys Lynn Pierce and Ron Gainor. The court has considered the testimony and credibility of all of the witnesses, the exhibits received in evidence, and the arguments presented by the parties. The court now being fully informed makes the following findings of fact, conclusions of law, and order.

### FINDINGS OF FACT

The court finds beyond a reasonable doubt:

1.     That it has jurisdiction over the subject matter and over the parties



EXHIBIT
1

2

. to this lawsuit.

2.   That each party has been given a fair and adequate opportunity to be heard.

3.   That venue is proper in the State and District of Colorado.

4.   That at the beginning of this trial, the parties stipulated into evidence Government's exhibits 1, 3, 4, 5, 6, and 7.

5.   That Government's exhibit 2 was also admitted into evidence during the trial without objection by Defendant.

6.   That victim/witness "T.R."[1] and witnesses Steven Voit, Beth Voit, Lorilee Mandel, and Alberto Gomez each identified the Defendant, Alexander Vladimirovich Kolotov (hereinafter "Defendant"), pursuant to a photograph line-up. See Government's exhibits 3 through 7, inclusive.

7.   That on October 15, 2004, while in the Miami, Florida, airport, waiting to board United Airlines flight 361 from Miami, Florida, to Denver, Colorado, Alberto Gomez noticed that T.R. was seated directly in front of Mr. Gomez approximately two (2) to three (3) meters away. To the side of Mr. Gomez, waiting for this same flight, was the Defendant. Mr. Gomez testified that he noticed that the Defendant was intently looking at T.R. for more than one hour before this flight was boarded. Mr. Gomez did not see any

_____

[1]In keeping with the tradition of not revealing names of the victims of sexual assault, the court has used initials here to protect the privacy of the alleged victim.

3

conversations take place between the Defendant and T.R. while they were waiting to board the aircraft. Mr. Gomez testified that T.R. appeared to be sleeping, and she did not look at Mr. Gomez, nor did she look at the Defendant. The Defendant testified that he and T.R. spoke briefly in the Miami Airport concerning a controversial baseball play that was being broadcast over the television in the airport.

8.   That T.R. had flown from Buenas Aires, Argentina, to Miami, Florida, and was waiting to board United Airlines flight 361 to Denver, Colorado. T.R. was very tired and just wanted to sleep. See testimony of T.R.

9.   That on October 15, 2003, the Defendant boarded United Airlines flight 361 from Miami, Florida, to Denver, Colorado. Defendant was assigned seat 22F for this flight. See Government's exhibit 1 and testimony of Defendant.

10.   That on October 15, 2003, T.R., Steven Voit, Beth Voit, Alberto Gomez, and Lorilee Mandel also boarded United Airlines flight 361 from Miami, Florida, to Denver, Colorado. T.R. is a United Airlines employee working in reservations. Mr. Voit is a United Airlines pilot, and his wife is a housewife. Mr. Gomez is a citizen of Columbia seeking citizenship in the United States and works as a real estate investor. Ms. Mandel was one of three United Airlines flight attendants on board United Airlines flight 361. Ms. Mandel

4

was working in the economy class section of this aircraft.

11.   That this aircraft was an Airbus with 24 rows.  Steven Voit was a

United Airlines Pilot traveling as a passenger along with his wife,

Beth Voit, on this flight.  Mr. and Mrs. Voit had been assigned seats

in row 24, which was the last row of the aircraft.  It should be noted

that the seats in the last row of this aircraft do not recline.

12.   That T.R. was assigned seat 23F, which was the window seat in

the row just in front of where Mr. and Mrs. Voit were seated.

13.   That this flight was approximately 30 to 40 percent full, and there

were a number of empty seats on this flight.

14.   That T.R. struck up a conversation with Mr. and Mrs. Voit regarding

the seats that they were assigned.  She informed them that those

seats in row 24 do not recline, and they were welcome to move up

to her row to sit so that they could have reclining seats.  At the time

of the conversation between T.R. and Mr. and Mrs. Voit, T.R. did

not know that Mr. Voit was a United Airlines pilot.

15.   That following this conversation between T.R. and Mr. and Mrs.

Voit, the Voits moved seats.  Mr. Voit took the aisle seat in row 23

where T.R. was seated on the same side of the aircraft.  The

middle seat between T.R. and Mr. Voit was empty.  Mrs. Voit took

the other aisle seat directly across from her husband, Mr. Voit, on

the other side of the aircraft.

16.   That during the flight, the Defendant approached Mr. Voit and

5

asked if he would move seats so that Defendant could sit in the same row as T.R., namely, row 23. Mr. Voit initially told the Defendant no, since his wife was seated in the other aisle seat across from Mr. Voit. The Defendant again asked Mr. Voit to move. This time the Defendant asked Mr. Voit to move because he **"wanted to sit next to his girlfriend."** Based upon this request, Mr. Voit and Mrs. Voit moved to row 22 where the Defendant was seated since those three seats on that side of the aircraft were unoccupied. The reference in this statement made by the Defendant to the word **"girlfriend"** was referring to T.R.

17.   That the Defendant and T.R. did not know each other prior to this incident.

18.   That when Defendant switched seats with Mr. Voit, the Defendant sat in the middle seat in row 23 next to T.R. who was seated in seat 23F next to the window. It should be noted that the aisle seat in row 23 was unoccupied, and the Defendant could have sat in the aisle seat but chose not to sit in the aisle seat even though the Defendant is a fairly large individual, and he would have had more room to sleep if he sat in the aisle seat.

19.   That during the flight, Mr. Gomez had to use the bathroom at least six (6) times. The reason why he had to use the bathroom so frequently was because of some heart medication he was taking.

6

The first time Mr. Gomez went to the bathroom in the back of the aircraft, he noticed that the "bald guy" was seated in the aisle seat in the same row in which T.R. was seated. The "bald guy" has been identified as Mr. Voit. At this time, Mr. Voit was reading his newspaper. The second time Mr. Gomez went to the bathroom, he saw the Defendant seated in the middle seat next to T.R., and the bald guy was gone. The Third time that Mr. Gomez went to the bathroom, he noticed that the Defendant and T.R. were covered by a blanket, and the Defendant was leaning into T.R. Mr. Gomez testified that he did not think that the Defendant was sleeping.

20.     That Mr. Voit testified that he later got up to use the bathroom, and he noticed that the Defendant was leaning up against T.R., their bodies were touching, and they were covered with a blanket. Mr. Voit further testified that approximately 20 or 30 minutes later, T.R. woke up, was upset, and was crying and trying to move the Defendant away from her. Mr. Voit heard T.R. say: **"Get off of me." and " What are you doing here?"**, and during this time T.R. was trying to push the Defendant away from her. During this time, T.R. appeared frightened and scared when she made these statements as testified to by Beth Voit. The Defendant responded to T.R. by saying: **"It's okay, it's okay."** Mr. Voit testified that he turned around and noticed that T.R. appeared to be scared and

7.

frightened as well. The flight attendant, Ms. Mandel, arrived, and

Mr. Voit showed Ms. Mandel his United Airlines credentials and told

her to move the Defendant away from T.R. Defendant was then

moved to seat 10D in the front part of the airbus away from T.R.

Thereafter, T.R. asked Mr. Voit, **"Why did you let this person do

this?"** Mr. Voit's response was: **"I thought he was your

boyfriend."**

21.     T.R. testified that she was seated in seat 23F. It was a window

seat. She was very tired, and she wanted to sleep since she had

not slept much during her flight from Buenos Aires, Argentina, to

Miami, Florida. She recalls speaking to Mr. and Mrs. Voit and

offering them to change seats so that they would have seats that

recline. She remembers that Mr. Voit moved to the aisle seat next

to her. The middle seat between Mr. Voit and T.R. was

unoccupied. She recalls that the arm rest between her seat and

the middle seat was down when she fell asleep and that her seat

was reclined. She next remembers feeling a body on top of her

and a hand touching the inside of her thigh about two (2) inches

away from her groin under her dress. She woke up, and she still

felt the hand touching her inside of her thigh. She stated that the

armrest between her seat and the middle seat was now up, the

Defendant was on top of her, and his face was a few inches away

8

from hers. T.R. testified that the Defendant did not have permission to touch her, and she did not know the Defendant. She told the Defendant to "Get the fuck off of me." She attempted to pull down the armrest, but she could not since the Defendant's body was occupying that space. She was eventually able to push the flight attendant call button, and the flight attendant, Ms. Mandel, did arrive. T.R. stated that the Defendant showed no emotion but said: "I'm sorry." At the time the Defendant made this statement that he was sorry, he was still on top of T.R. Thereafter, T.R. began pushing, screaming, and hitting the Defendant, and he finally got off of her.

22.    That Lorilee Mandel testified that she was working in the economy section of the airbus. She was serving breakfast, and she noticed that T.R. was sleeping and that the Defendant was seated next to T.R. and was also sleeping. Both T.R. and the Defendant told Ms. Mandel that they did not want any breakfast or any drinks, and they appeared to go back to sleep. T.R. woke up for only a few seconds according to Ms. Mandel. Later in the flight, Ms. Mandel recalls responding to the call button for seat 23F, which was T.R.'s seat, and when Ms. Mandel arrived, she noticed that T.R. was crying, upset, and hysterical. T.R. told Ms. Mandel that she was sleeping and then she woke up and this man (referring to Defendant) had

9

his hand up her skirt.   Defendant said: **"I did not touch her.   I was sleeping also."** Ms. Mandel testified that the Defendant seemed calm, showed no emotion, and appeared surprised.  Ms. Mandel eventually moved the Defendant to seat 10D  towards the front of the airbus and away from T.R.  Ms. Mandel also noticed that T.R. was hitting and kicking the Defendant when he said he did not touch her.

23.    That the Defendant testified that he came to the United States in December 1998.  He is currently married to Olga Kolotov, who is an American citizen, and they have with two children.  The Defendant's legal status in the United States is as a permanent legal alien.  He has a high school diploma and was born in the Russian Republic.  He worked as an insurance agent in the past but is currently self-employed and living in Portland, Oregon.  That on October 15, 2003, he had originally been assigned seat 22F on United Airlines flight 361.  There were no other people seated next to him in that row.  During the flight, he went to the bathroom and did admit on cross-examination that he told Mr. Voit that he wanted to sit next to his girlfriend.  He testified that this statement was not accurate but stated that he did not know the American word for friend.  However, the undisputed evidence shows that T.R. did not know Defendant, and she was not his girlfriend at the time of this

10

incident.  Defendant denies having touched T.R. either intentionally

or unintentionally.  He testified that he was asleep and did not

sexually or otherwise assault T.R.  The Defendant was able to

answer all questions asked by counsel and has a very good

command and understanding of the English language.  Based upon

Defendant's knowledge of the English language, he knows what

the word **"girlfriend"** means.

24.    That once the Defendant disembarked United Airlines flight 361 at

Denver International Airport (hereinafter "DIA"), the Defendant was

taken into custody by the Denver Police Department and placed in

the West Special Services Room at the B concourse at DIA.  Later,

Special FBI Agent Joel Nishida was contacted by the Denver Police

Department, and he responded to the West Special Services

Room.  Special Agent Nishida advised the Defendant both orally

and in writing of his *Miranda* rights.  After a full and complete

*Miranda* advisement, the Defendant signed the written advisement

form, waived his *Miranda* rights, and agreed to speak to Special

Agent Nishida.  See Government's exhibit 2 and testimony of

Special Agent Nishida.  Defendant told Special Agent Nishida that

during the flight he went to the bathroom and that upon his return to

his seat, an unknown male (referring to Mr. Voit) seated in the

same row as T.R. asked the Defendant if he would switch seats so

11

he and his wife could sit together. Defendant agreed, and he switched seats, and that is how he ended up seated next to T.R. Defendant told Special Agent Nishida that he did nothing wrong, and he did not touch T.R. Moreover, he told Special Agent Nishida that he never told anyone on that flight that T.R. was his girlfriend. It should be noted that during his testimony at trial before this court, the Defendant admitted that he did tell Mr. Voit that T.R. was his girlfriend, that he asked Mr. Voit to switch seats with him so that he could sit next to his girlfriend (referring to T.R.), and that he did sit in the middle seat next to T.R. and was next to her when she woke up even though the aisle seat in row 23 was vacant.

25.    That the court finds the testimony of the Defendant to be not credible.

26.    That the court finds the testimony of T.R. to be credible.

## CONCLUSIONS OF LAW

Count one in the Information charges the Defendant with the offense of Sexual Assault, in violation of 18 U.S.C. § 2244(b) and 49 U.S.C. § 46506 (Class B Misdemeanor).

The elements of this offense are:

1.    That the Defendant Alexander Vladimirovich Kolotov;

2.    On or about October 15, 2003;

3.    On an aircraft in the special aircraft jurisdiction of the United States;

4.    In the State and District of Colorado;

12

5.     Did knowingly engage in sexual contact with another person

without that person's permission.

Court two in the Information charges the Defendant with the offense of Assault in

violation of 18 U.S.C. § 113(a)(5) and 49 U.S.C. § 46506 (Class B Misdemeanor).

The elements of this offense are:

1.     That the Defendant Alexander Vladimirovich Kolotov;

2.     On or about October 15, 2003;

3.     On an aircraft in the special aircraft jurisdiction of the United States;

4.     In the State and District of Colorado;

5.     Did knowingly commit simple assault upon another person.

The word "knowingly" means that the act was done voluntarily and intentionally

and not because of mistake or accident or other innocent reason.  See Tenth Circuit

Pattern Jury Instruction 1:37 revised August 9, 2004.

The term "sexual contact" means the intentional touching, either directly or

through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any

person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the

sexual desire of any person.  See 18 U.S.C. § 2246 (3).

Based upon these findings of fact and conclusions of law, the court finds, beyond

a reasonable doubt, that the Defendant voluntarily and intentionally used his hand and

placed his hand on the inner thigh of T.R. approximately two (2) inches from her groin

and under her dress, without her permission, while on United Airlines flight 361 from

Miami, Florida, to Denver, Colorado, on October 15, 2003, and did knowingly have such

sexual contact with the intent to arouse and degrade T.R. and to gratify the Defendant's

13

own sexual desire. The court further concludes, beyond a reasonable doubt, that the

Defendant knowingly committed simple assault upon T.R. while on United Airlines flight

361 from Miami, Florida, to Denver, Colorado, on October 15, 2003.

Accordingly, the court finds the Defendant Alexander Vladimirovich Kolotov

GUILTY, beyond a reasonable doubt, of Count One Abusive Sexual Contact in violation

of 18 U.S.C. § 2244(b) and 49 U.S.C. § 46506 (Class B Misdemeanor). The court

further finds the Defendant Alexander Vladimirovich Kolotov GUILTY, beyond a

reasonable doubt, of Count Two Simple Assault in violation of 18 U.S.C. § 113(a)(5)

and 49 U.S.C. § 46506 (Class B Misdemeanor).

### ORDER

Based upon these findings of fact and conclusions of law, the court ORDERS:

1.   That the Defendant Alexander Vladimirovich Kolotov's Renewed
     Oral Motion for Judgment of Acquittal pursuant to Federal Rule of
     Criminal Procedure 29 is DENIED.

2.   That a presentence investigation shall be conducted by the Federal
     Probation Department for the District of Colorado and that a
     presentence investigation report shall be prepared by the Federal
     Probation Department.

3.   That a sentencing hearing is set on December 7, 2004, at 9:30
     a.m. in courtroom A502 before Magistrate Judge Michael J.
     Watanabe.

4.   That Defendant Alexander Vladimirovich Kolotov shall appear at

14

his sentencing hearing on December 7, 2004, at 9:30 a.m. in

courtroom A502.

5.     That the Defendant's bond shall continue until his sentencing

hearing.

Done this 4th day of October 2004.

BY THE COURT

MICHAEL J. WATANABE
U.S. Magistrate Judge

I, the undersigned, Clerk of the
United States District Court for the
District of Colorado, do certify that
the foregoing is a true copy of an
original document remaining on file
and record in my office.
WITNESS my hand and SEAL of said
Court this ____ day of _____
GREGORY C. LANGHAM
By _____  Deputy

15

---

## CERTIFICATE OF SERVICE

---

I hereby certify that on _10/5/_____, 200_4_ , a copy of the foregoing document was served to the following persons by:

_X_  United States mail, proper postage affixed:

Lynn Pierce
720 Kipling St., #201
Lakewood CO 80215

Ron Gainor
6414 Fairways Drive
Longmont CO 80503

_X_  Hand delivery (where a D.C. Box number appears):

Josh Stein
Assistant U.S. Attorney

_____
Deputy Clerk